STATE EX REL. GOODMAN, RELATRIX, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 3,270.)

(Submitted December 16, 1912.   Decided December 20, 1912.)

[128 Pac. 913.]

*District Judges—Affidavit of Disqualification—Effect of Filing
—Probate Proceedings—Decree of Distribution—Partition—
Mandamus.*

District Judges—Affidavit of Disqualification—Effect of Filing—Probate
Proceedings.
1.  Under amended section 6315, Revised Codes (Laws 1909, p. 161),
the filing of the affidavit mentioned therein, prior to the day set for
the trial of an action or the hearing of a motion or proceeding (in-
cluding probate proceedings), *ipso facto* works a disqualification of
the judge against whom it is directed, and thereafter he has no power
to act further in such action or proceeding than to arrange his calen-
dar, to regulate the order of business, to order a transfer to some other
court, or to call another judge to preside in his stead.

Same—Decree of Distribution—Partition.
2.  *Held,* on *mandamus,* that an affidavit disqualifying a district judge
from further acting in the administration of an estate, filed after the
court had made its decree of distribution, was in time, where a pro-
ceeding for partition had been initiated; in such a case the adminis-
tration is not finally disposed of by the decree, but is deemed to be
pending until the confirmation of the report of the commissioners and
the final vesting of title in the allottees.

Same—Partition—Jurisdiction.
3.  The power to make partition among the distributees of an estate
is vested in the court as an incident of administration.

Original application, by the state, on the relation of Bessie
Goodman, for writ of mandate to compel J. Miller Smith, one
of the judges of the district court in and for Lewis and Clark
county, to recognize an affidavit disqualifying him from further
acting in a probate proceeding and order a transfer thereof to
department one of said court.   Writ issued.

*Mr. E. A. Carleton,* for Relatrix, submitted a brief and argued
the cause orally.

*Messrs. Frank W. Mettler,* and *Andrew H. McConnell,* for
Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Mary Goodman died intestate in Lewis and Clark county on November 15, 1911, leaving an estate consisting of real and personal property.  Henry Sheehan was appointed the administrator by Hon. J. Miller Smith, the judge presiding in department 2 of the district court of Lewis and Clark county.  The relatrix herein is entitled to a distributive share in the estate, as assignee of Jacob Goodman, a son of the deceased, she being recognized as such assignee both by the court and the other persons entitled to distributive shares therein.  On June 20, 1912, the court made and entered its decree settling the final accounts of the administrator and directing distribution of the residue of the estate, which, except certain household furniture, consists of separate pieces of real estate situated in the city of Helena.  The relatrix was declared entitled to an undivided one-ninth interest. In the meantime, on May 31, she had filed her petition alleging that the property constituting the estate could not be fairly divided among those entitled to it, without partition by one or more commissioners appointed by the court for that purpose, and asking that such commissioners be appointed.  On June 20, after the decree of distribution had been made and with the consent of all the distributees, the court appointed John N. Glass commissioner to make the partition.  The decree of distribution deferred final discharge of the administrator until partition should be made.  The order of appointment required the commissioner, in case he ascertained that partition by allotment could not be effected without prejudice to the interests of the distributees, to so report to the court and also to report the true value of the property.  On June 27 the commissioner reported in writing that partition could not be made by allotment without prejudice to the interests of the distributees.  He stated the value of the property to be $3,227, recommended that it be sold, and that the proceeds be distributed, and prayed that an order be made authorizing him to make the sale.  On the same day the court made an order directing the commissioner to sell at public or private sale and report his action.  The commissioner not hav-

ing been able to effect a sale up to that time, the court on December —— ordered him to file his final report, it being the purpose, as the judge then stated, to discharge him from his office and presumably to discharge the administrator also, leaving the title of the distributees to be held in common under the decree of distribution. On December 2 the relatrix filed a motion asking for an order requiring the administrator to have recorded a certified copy of the decree of final distribution, and also that he be required to collect the rents accruing from the real estate. She also, through her attorney, requested the court to retain the commissioner in office until he could effect a sale for which he was then negotiating. The judge informed counsel that he would not do this. Immediately thereafter the relatrix filed an affidavit, through her attorney, alleging that she believed, and had reason to believe, that she could not have a fair and impartial trial of the proceedings pending for decision before Judge Smith by reason of his bias and prejudice. On December 9 she filed a formal motion for a transfer of the administration and all further proceedings to department 1 of the court to be disposed of by Hon. J. M. Clements, the judge presiding therein. Judge Smith declined to consider the affidavit, and signified his intention to retain jurisdiction and make final disposition of the administration as though the affidavit had not been filed. Thereupon this application was made to this court for *mandamus* to compel him to recognize his disqualification and order the transfer to be made.

In pursuing the course he did, Judge Smith evidently proceeded upon the assumption that the decree of distribution was a final disposition of the administration and that the attempt to disqualify him came too late. Under section 6315 of the [1] Revised Codes, as amended by the Act approved March 8, 1909 (Laws 1909, p. 161), the filing of the affidavit at any time prior to the day set for the trial of an action or the hearing of a motion or proceeding, *ipso facto* works a disqualification of the judge against whom it is directed. Thereafter he is without authority to act further in any judicial capacity in connection with the action or proceeding in question, except to arrange his

calendar, to regulate the order of business, to order a transfer to some other court or to call another district judge to preside in his stead.   If two or more judges reside in the same district, the judge first called must be the other, or one of the other, judges residing in the same district as the disqualified judge; otherwise a judge from another district must be called or the action or proceeding must be transferred to a judge of another district. Where the business of the court is distributed into departments presided over by different judges, the change of judge is usually effected by a transfer to another department.   The scope and application of the old statute (sec. 180, Code Civ. Proc. 1895, as amended by Laws 1903 (2d Extra Session, p. 9), sec. 6315, Rev. Codes) was considered by this court in *State ex rel. Nissler* v. *Donlan,* 32 Mont. 256, 80 Pac. 244.   One of the questions presented in that case was whether the statute applied to probate proceedings.   It was held that it included within its scope all civil actions as well as special proceedings of a civil nature, in which latter classification probate proceedings are put by the Codes. (See, also, *State ex rel. Carleton* v. *District Court,* 33 Mont. 138, 8 Ann. Cas. 752, 82 Pac. 789.)   The amendatory Act did not change the scope of the Code provision as construed in these cases.   The affidavit filed by the relatrix met all the requirements of the statute.   Whether it was effective to disqualify Judge Smith or not must be determined by an answer to the inquiry: Did the decree of distribution make final disposition of the administration?   If so, there was nothing further to be determined with reference to which a disqualification could be wrought.

The proceeding for partition, either by allotment, assignment or by sale and distribution of the proceeds, is authorized by the Codes (secs. 7678–7689).   It becomes apparent upon examination of these provisions that the purpose of the legislature in enacting them was to vest in the court, when sitting in probate, the power to partition among the distributees of an estate entitled to interests therein, real or personal property owned in severalty by the decedent in his lifetime, thus obviating the necessity for an independent proceeding brought after the close

of the administration to accomplish the same result. Under section 7679 the petition may be filed at any time before the decree of distribution is made, and possibly must be so filed, but the commissioners may not be appointed until afterward. While [2] ordinarily a decree of distribution is the final disposition of the administration, except the formal discharge of the administrator, when the proceeding for partition has been initiated, the decree of distribution, though final in form, performs only the office of ascertaining definitely who are entitled to the succession and the interest of each distributee, the vesting of title in the allottees, the assignee or purchaser, as the case may be, being left in abeyance until the confirmation of the report of the commissioners. That this is the correct theory is made clear when we observe that, whether the final result is accomplished by allotment in severalty (sec. 7682, Rev. Codes), or by assignment (secs. 7683, 7684), or by sale and distribution of the proceeds (sec. 7685), the title to the property involved or the portions thereof allotted finally vests only upon the confirmation of the report of the commissioners. Necessarily, therefore, until the confirmation of the report and the final vesting of title, the administration is still pending; for it is only because of its pendency that [3] the court can entertain the partition proceeding at all. The power to make partition is vested in the court as an incident of the administration, the principal proceeding. (*Robinson* v. *Fair,* 128 U. S. 53, 32 L. Ed. 415, 9 Sup. Ct. Rep. 30.) In a particular case it might be necessary for the court to discharge the commissioners already appointed and appoint others in their stead. In a case in which all the parties are *sui juris,* as here, some of them might desire to abandon the partition proceeding and have the estate distributed to them in common. Whether this should be permitted is to be determined by the court upon the facts as they are shown to exist. So, also, in any case, upon application by the administrator for his final discharge, a question may be presented as to whether he has observed the directions contained in the decree of distribution. But whatever exigency may arise from time to time, until the whole proceeding is disposed of by some final action by the judge releasing the

parties and their property from the control of the court, jurisdiction over it continues, and the successive steps to be taken are matters for judicial cognizance and determination. At any time during the course of this administration, therefore, it was competent for relatrix, one of the parties in interest, to avail herself of the provisions of the statute in order to disqualify Judge Smith and have her rights, whether substantial or not, determined by another judge.

Let the writ issue as prayed for.

*Writ granted.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument and takes no part in the foregoing decision.